P. L. WIGGINS *v.* VANNIE CHEATHAM *et al.**

(*Knoxville.* September Term, 1920.)

WILLS. Removal of stock of goods and temporary suspension from business held not to work ademption of legacy of business.

The removal by proprietor of whisky business of his stock of whisky and fixtures from a location where he had been conducting his business, and the storage thereof in a public warehouse with the intention of resuming business at some other location, did not work an ademption of legacy, in previously executed will, of his "entire whisky business now conducted at" specified address at which business had been so conducted, though proprietor died while stock was in storage, before the resumption of business, since the specific property bequeathed was in existence at time of his death and subject to identification.

Cases cited and distinguished: Ford v. Cottrell, 141 Tenn., 176; Banking Co. v. Balfour, 138 Tenn., 390.

———

FROM HAMILTON.

———

Appeal from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. W. B. GARVIN, Chancellor.

———

*Authorities discussing the question of change in subject-matter or substitution of other property as an ademption of a specific legacy or devise, are collated in notes in 40 L. R. A. (N. S.), 553; L. R. A., 1918D, 538.

T. P. Shepherd and F. S. Carden, for appellant.

Cantrell, Meacham & Moon, for appellees.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by complainants to have construed the will of C. D. Cheatham, and especially items 3 and 6 thereof, which are as follows:

"3. I give my entire whisky business now conducted at 1221-1223 Market street, Chattanooga, Tenn., in equal parts to P. L. Wiggins and M. M. Gholson."

"6. I give to P. L. Wiggins and M. M. Gholson the right to retain my business name either as C. D. Cheatham or the National Whisky Company or both."

The will was executed on October 28, 1916, by the testator. He died on the — day of July, 1918, and was, at the time of his death, a resident of Hamilton county, Tenn.

Prior to July 1, 1917, he had been engaged as a whisky merchant at 1221-1223 Market street in the city of Chattanooga, Tenn., but on account of adverse legislation, which took effect on July 1, 1917, he had moved his stock of whisky and fixtures just a short time before July 1, 1917, to Louisville, Ky., where he had stored them in a public warehouse, for which he held negotiable warehouse receipts.

Quite a large payment in the way of taxes due the United States government was required of the testator, and he borrowed from a Chattanooga bank the money necessary to pay these taxes, and secured this loan to the

bank by pledging to it said warehouse certificates. Later a part of the whisky was sold by the testator; and the loan repaid, and the warehouse certificates taken up. A short time before his death the testator borrowed from a bank in Chattanooga the sum of $3,000, and again deposited a portion of these warehouse certificates with the bank as security for said loan, and at the time of his death he was still indebted to the bank for this last loan, which was paid after his death by the executor out of the proceeds of the whisky remaining, which was sold after the testator's death. The whiskey owned by the testator and stored by him in the warehouse at Louisville was the identical whisky which he removed from his place of business at Chattanooga a short time prior to July 1, 1917, and, while some of it had been purchased after the execution of the will, all of it constituted a portion of the stock at the time he was forced out of business in Tennessee by adverse legislation. At the time of his death the testator was not actually engaged in the whisky business in Chattanooga, or elsewhere. The evidence shows, however, that he had only suspended business temporarily; it being his intention at the time he removed his stock of whisky from Chattanooga to resume business at some other location where he could do so legally, and to use the whisky so stored in the warehouse at Louisville in such business. He had made numerous inquiries as to a suitable location, and discussed the matter of resuming business with a number of his friends. After his death the entire stock of whisky in storage at Louisville was sold by the executor,

and the funds are now being held subject to a construction of the testator's will.

The question presented is whether or not this stock of whisky passed to P. L. Wiggins and M. M. Gholson as a specific legacy under items 3 and 6 of the testator's will.

It is the contention of Wiggins and Gholson that it did. On the other hand, it is insisted by the defendants that the removal of the whisky from Chattanooga by the testator, and the discontinuance of the whisky business by him in Chattanooga, so altered and changed the specific property bequeathed to Wiggins and Gholson as to destroy its identity, and that it became a part of the testator's general estate; in other words, it is insisted by the defendants that the removal of said whisky from Chattanooga to Louisville had the effect of adeeming the legacy to Wiggins and Gholson.

The chancellor sustained the contention of the complainants, and held that the legacy was specific and had not been adeemed.

From this decree defendants appealed to the court of civil appeals, and, that court having affirmed the decree of the chancellor, the cause is now before this court upon the defendants' petition for a writ of *certiorari* and for review.

Mr. Pritchard, in his valuable work on Wills, states the rule with reference to specific legacies as follows:

"In order to complete the title of the specific legatee to his legacy, the very thing bequeathed must be in existence at the death of the testator and then form part of the es-

tate. If the particular thing given be wholly lost, destroyed, or disposed of by the testator in his lifetime, or if its form be so changed that the thing no longer remains in specie, the legatee has no right or claim, and the executors are under no obligation to replace the same by purchasing another of the same kind. The legacy is said to be adeemed; that is, it is taken away, removed, or extinguished, so that the legatee's right to claim it is gone. The rule prevails without regard to the intention of the testator or the hardship of the case, and is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply. Whatever, therefore, put an end to the specific thing, so that at the testator's death it does not form a part of his estate, is an ademption of the legacy. If the testator never had the article purported to be specifically bequeathed, or if he had it at the time of making the will, but it has afterwards been consumed or used, or lost by death or destruction, or has been sold, assigned, or otherwise disposed of by the testator, or if, with his knowledge and consent, its specific form and character have been wholly altered so that the identical thing given by the will has ceased to exist, then the legacy is gone, extinguished, and the legatee's rights to it are destroyed." Pritchard on Wills, 431, section 462.

In *Ford* v. *Cottrell*, 141 Tenn., 176, 207 S. W., 736, it is said: "An ademption of the legacy is effected when by some act of the testator its subject-matter has ceased to exist in the form in which it is described in the will so that

on his death there is nothing answering the description to be given to the beneficiary."

In *Banking* v. *Balfour*, 138 Tenn., 390, 198 S. W., 71 L. R. A. 1918D, 536, the court, in stating what constituted an ademption of a specific legacy, said:

" 'Ademption' of a specific legacy is the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject-matter which interferes with the operation of the will."

Applying these rules to the facts of the instant case, there was no ademption of the legacy given to Wiggins and Gholson by the testator, as there was no extinction, alienation, withdrawal, destruction, or change in the specific property bequeathed. The property was in existence at the death of the testator in exactly the same form, though not in the same place, as when the will was executed. A change in form is not involved. It is only the change in location and the different situation as to business relations. Neither is the question of an attempted substitution of one property for another in an effort to carry out the intention of the testator involved.

Counsel for defendants, in their brief, refer to section 462 of Pritchard on Wills, in which it is insisted that the rule is announced that a removal of the property will work an ademption.

The language referred to in said section evidently has reference to a situation where the subject of the legacy

cannot be identified except by its location, because in the same section it is stated:

"A removal of goods would hardly produce this result [ademption] if the will contained such other description of the articles bequeathed as made the gift specific without reference to the place of deposit, or where, from the nature of the place described, it is clear the locality was not referred to as essential to the specific quality of the gift. And a removal for the purposes of use by the testator or for the purpose of repair, or for safe custody, or for preservation from fire, or a wrongful removal without the testator's consent, will not produce an ademption."

We do not think that the construction can be avoided that the testator intended to bequeath everything pertaining to and as a part of his whisky business to Wiggins and Gholson. In fact, this is not controverted by the defendants, for in the brief of counsel it is said:

"It is perhaps true that the assets would have passed as part of the whisky business if such business had been in existence at testator's death."

We do not think that the fact that the testator was not actually engaged in business at the time of his death can be said to destroy the specific character of the property intended to be bequeathed in his will. That part of the specific property bequeathed, and which remained unsold, was in existence at the time of the testator's death, and was subject to identification. This, we think, was sufficient to bring it within the rule of a specific legacy, and it is enforceable as such.

The decree of the court of civil appeals will be affirmed with costs.