RHODES *v.* KEBKE.

(*Nashville*, September Term, 1942.)

Opinion filed January 9, 1943.

CANALE, GLANKLER, LOCH & LITTLE and HAROLD S. LEEKER, all of Memphis, for complainant.

F. E. HAGLER and EXBY & MORIARTY, all of Memphis, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The question for our consideration and determination involves the construction of the will of Herman Rhodes,

deceased. The said Herman Rhodes was a successful business man in Memphis, and about five years before his death he executed a will in which he divided his property amongst his widow, heirs, and next of kin. His widow, Mary B. Rhodes, was named as executrix of the will. After making a number of bequests to several of his brothers, sisters, and nephews, he made the following bequest to his sister Ruby Rhodes Kebke, being Item 9 of the will, as follows:

"To my sister, Mrs. Ruby Rhodes Kebke, of Memphis, Tennessee, I hereby give, devise and bequeath all the capital stock owned by me at the time of my death in Kebke Housefurnishing Co., a corporation, now doing business in Memphis, Tennessee."

When Mrs. Mary B. Rhodes qualified as executrix of her husband's estate, there came into her hands certain notes duly executed by Mrs. Kebke in the sum of $4,-666.66 each, and payable to Herman Rhodes. To these notes was attached twenty-eight shares of stock in the Kebke Housefurnishing Co. as collateral. The executrix made a demand upon Mrs. Kebke for the payment of these notes. She thereupon filed her original bill in the Chancery Court of Shelby County, seeking a construction of her brother's will and especially Item 9 wherein she was given the above mentioned shares of stock.

We will hereafter refer to Mrs. Ruby Rhodes Kebke as the complainant, and Mrs. Mary B. Rhodes, executrix, as the defendant.

It is alleged in the bill that Herman Rhodes was a man of considerable wealth, who intended that the bulk of his estate should be divided among his widow and his daughters, which intention is adequately provided for by the terms of his will; also his intention that his

brothers and sisters should share with approximate equality in his estate; that to this end he made various gifts to certain of his brothers and sisters during his lifetime and also made bequests to them in his will. The bill was amended and complainant further alleged that prior to his death her husband and her brother Herman Rhodes established a furniture business, known as the Kebke Housefurnishing Co., a corporation, and that each contributed a portion of the capital in this business. It is further alleged that in the exact, same manner another business, known as the Walsh Furniture Co., was established by the said Herman Rhodes with one Lance D. Walsh, who was the husband of Evelyn Rhodes Walsh, another sister of the deceased; that it was the intention of deceased that his interest in the Kebke Housefurnishing Co. should become the property of complainant, and that his interest in the Walsh Furniture Co. should be ultimately owned by his sister Evelyn Walsh.

It appears that on December 15th, following the execution of the will on July 3, 1935, complainant and her brother entered into an agreement for the purchase by her of said twenty-eight shares of the capital stock of the Kebke Housefurnishing Co. at a total price of $23,333.33; that the testator caused the said shares to be registered in complainant's name, and she in turn endorsed said shares in blank and deposited them with her brother as collateral to secure the purchase price therefor; that the purchase price was evidenced by five notes executed by complainant and dated December 15, 1937. The first note for $4,666.67 was due one year after date and the other four notes, each in the same amount, became due serially, that is, only one note became due and payable each year thereafter. The first two notes, 1 and 2, were paid by complainant during the lifetime of the testator. The

other three notes remained unpaid and were in the possession of defendant as executrix of the estate of the deceased. It is further averred by complainant that it was the intention of the testator to give her the twenty-eight shares of stock free from any lien or encumbrance and to forgive her the debt as represented by the unpaid notes, for otherwise she would be wholly excluded from any interest in her deceased brother's estate.

The prayer of the bill is that complainant be adjudged to be the owner of the said shares of stock and that the unpaid notes in the total amount of $13,999.99 be canceled.

The defendant demurred to the original and amended bill upon the following grounds: (1) The bill shows on its face that the deceased, Herman M. Rhodes, owned no stock in the Kebke Housefurnishing Co. at the time of his death, and that therefore Item 9 of the testator's will exhibited to the Court has no force and effect; (2) the bill shows on its face that the testator, Herman M. Rhodes, disposed of the stock which was the subject of the specific legacy in Item 9 of the will exhibited to the Court and that therefore said specific legacy was adeemed; (3) the bill shows on its face that the provisions of the will exhibited to the Court, particularly Item 9 thereof, are in clear, concise, and unambiguous language, and that this Court has no jurisdiction to look beyond its terms to construe it.

The Chancellor overruled the demurrer and granted a discretionary appeal to this Court.

The action of the Chancellor in overruling said demurrer is assigned as error. It is earnestly insisted by able counsel that the gift of the shares of stock by Item 9 of the will is specific and that the agreement between complainant and deceased on December 15th, whereby

Mrs. Kebke executed certain notes for the payment of said stock, worked an ademption of the legacy.

In *Wiggins* v. *Cheatham*, 143 Tenn., 406, 225 S. W., 1040, 1041, 13 A. L. R., 169, the Court in discussing the question of ademption by removal of the property, or that it is extinguished "so that the legatee's right to claim it is gone," says:

"The rule prevails without regard to the intention of the testator or the hardship of the case, and is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply."

In *Connecticut T. & S. D. Co.* v. *Chase*, 1903, 75 Conn., 683, 55 A. 171, 174, it is said:

"A total ademption by acts of a testator occurs in two cases only: (1) When he gives in his lifetime to a legatee what he had left him in his will; or (2) when, before his death, he so deals with the subject of the bequest as to render it impossible to effect the transfer or payment which the will directs."

The rule thus announced in *Wiggins* v. *Cheatham*, *supra*, is elementary and cannot be controverted, but, where the testator has made a bequest of a specific thing to a named beneficiary and later in dealing with such beneficiary with reference to the gift, it is claimed that the transaction amounts to a withdrawal of the gift from the operation of the will, or that it is an ademption by satisfaction, we think the question of intention is important.

Mr. Rood in his work on Wills, Section 715, says:

"In the matter of the ademption of legacies by satisfaction *the intention of the testator is the whole questions.*" (Italics ours.)

In the instant case, the testator, Herman Rhodes, transferred the stock in the Kebke Housefurnishing Co. to Mrs. Kebke, who immediately signed the certificates of stock back to her brother as collateral to secure certain of her notes. Now in these circumstances it is insisted that Herman Rhodes did not own the stock at his death and therefore, since there was nothing upon which the will could operate, the legacy was adeemed. In passing upon this question we think the intention of the testator is important. If the agreement operated to withdraw the shares of stock from the operation of the will, and it was so intended by the testator, it would necessarily follow that the bequest it totally adeemed. Should the Court consider the question of intention? We must answer this question in the affirmative, contrary to the insistence of appellant. In *Wiggins* v. *Cheatham, supra,* the Court quotes with approval what was said in *American Trust & Banking Co.* v. *Balfour,* 138 Tenn., 385, 390, 198 S. W., 70, L. R. A., 1918D, 536, as follows:

" 'Ademption' of a specific legacy is the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which *an intention to revoke is indicated*; the doing of some act with regard to the subject-matter which interferes with the operation of the will." (Italics ours.)

In *Lane* v. *Lane,* 22 Tenn. App., 239, 120 S. W. (2d), 993, 994, the testator bequeathed a certain restaurant to his brother that the latter was operating at 801 West Fifth Avenue "to use as his business for a period of ten years." After the execution of the will the testator ordered his brother to vacate the premises for another tenant, which he did. Upon the death of testator, his brother claimed the right to use the building free of rent for a ten year period. His right to do so was questioned

on the ground that the testator had, by his act, withdrawn the subject of the gift from the operation of the will. The Court, considering the act of the testator in removing his brother from the building, held that "it was the *intention* of the testator that complainant should have the use of said property for a period of ten years from the date of testator's death." In many cases where the testator dealt with the legatee or devisee with reference to the subject matter of the gift, in which it was contended that the transaction worked an ademption, the courts generally, if not uniformly, considered the testator's intention.

There is quite a similarity between the instant case and that of *In re Meyer's Will*, 174 Wis., 178, 182 N. W., 727, in which the question of ademption was urged upon the Court. In ruling that the transaction did not work an ademption, the Court said:

"So far as paragraph 5 is concerned *the dominant purpose of the testatrix* was (a) to pass the title to the lot to her daughter and husband, (b) to bequeath to them whatever sum was due on the land contract at the time of her death, and (c) to retain the value of the contract during her life." (Italics ours.)

The same rule was applied in the case of *In re Heidelmeyer's Estate*, 289 Mich., 404, 285 N. W., 29. Also, *In re Mann's Will*, 179 Wis., 66, 190 N. W., 830.

It has been held in many well considered cases that there will be no presumption of implied revocation of a devise where the testator later conveys property to the devisee and re-acquires possession and title to the same property. *Strange* v. *Day*, 1935, 362 Ill., 110, 199 N. E., 263, 103 A. L. R., 1215; *Wodward* v. *Woodward*, 33 Colo., 457, 81 P., 322; *Caine* v. *Barnwell*, 1919, 120 Miss., 209, 82 So., 65.

The case of *Tipton. v. Tipton*, 41 Tenn. (1 Cold.), 252, 255, cited by counsel for appellant, is not in point because the note bequeathed to the widow was later transferred by the testator to his son. There was no transaction between the testator and his widow with reference to said note. In *Ford v. Cottrell*, 141 Tenn., 169, 176, 207 S. W., 734, 735, the testator bequeathed to Ellender Cottrell for life the rents from a certain house and lot in South Knoxville, and at her death the "lot is to be sold and the proceeds given to the Baptist's Orphans' Home at Nashville, Tenn." After executing the will he sold the house and lot to a third person. This Court held that the devise to both the devisees, Ellender Cottrell and the Baptist Orphans' Home, was adeemed, citing *American Trust & Banking Co. v. Balfour, supra*, and other cases. The foregoing case is likewise not in point, because the subject of the bequest had passed from the testator to a third person and there was nothing upon which the will could operate, except the proceeds of the sale that should be applied to the payment of general legacies.

It appears in *Re Ireland's Estate*, 257 N. Y., 155, 177 N. E., 405, also cited by counsel, that the shares of stock were not in existence at the time the will took effect and could have no application to the instant case.

Running through all these cases cited in support of appellant's contention is the accepted fact that the property had passed from the testator, after the execution of the will, to third parties, or was not in existence when the will took effect, or the disposition made of it was wholly inconsistent with the terms of the specific bequest or devise. We do not have before us a case where the testator has transferred the subject of the bequest to someone other than the legatee. Applying the

rule of construction to the will of the testator, we must look to his intention in entering into the agreement with his sister to transfer to her the twenty-eight shares of stock during his lifetime. It is certain that when the will was made it was the testator's desire that Mrs. Kebke should become the owner of his interest in the Kebke Housefurnishing Co., just as he desired Mrs. Evelyn Walsh, another sister, to be the owner of his interest in the Walsh Furniture Co. Now just what reason the testator had for selling his interest and retaining the shares of stock as collateral to secure the payment by Mrs. Kebke of the notes executed by her, does not appear. Does this simple agreement between the testator and his sister work a total ademption of the bequest? We think not. To hold otherwise would be to cut her off entirely from any interest in her brother's estate contrary to his intention, as we think, and make her a debtor to his estate.

We find from the record that Mrs. Kebke and her husband were non-residents of Tennessee prior to the execution of this will; that her brother, Herman Rhodes, prevailed upon them to move to Memphis and to go into business with him. The Kebke Housefurnishing Co. was established and the testator exercised a certain amount of supervision over the business until the day of his death. His affectionate regard for Mrs. Kebke continued throughout his life.

In *Wiggins* v. *Cheatham, supra,* the testator bequeathed his entire whiskey business in Chattanooga to Wiggins and Gholson. Thereafter he transferred his business to Louisville, Kentucky, and stored the stock in a warehouse, for which he received negotiable warehouse receipts. At the time of his death the said warehouse receipts were held by a bank in Chattanooga to secure

a note against the testator. In these circumstances, this Court held that the bequest was not adeemed, but that the beneficiaries were entitled to the interest in the business that the warehouse receipts represented.

We cannot bring ourselves to the point of believing that the testator intended to bestow valuable gifts upon every member of his family, including his brothers and sisters, nieces and nephews, and leave Mrs. Kebke nothing. For us to hold that she meant nothing to her brother, other than just another person with whom he could drive a bargain to his financial advantage, would not only be a painful mental experience, but an injustice to the memory of a generous and kindly man. What he really meant, as gathered from the entire will and the situation of the parties, was to give her such interest in the Kebke Housefurnishing Co. as he might have at the time of his death. The unpaid notes with shares of stock attached as collateral, and held by him at the time of his death, represented his interest in the business at that time. While not a legal interest, it was an equitable interest, and ought to pass to the beneficiary under the terms of the will and the unpaid notes be canceled and discharged.

The action of the Chancellor in overruling the demurrer is affirmed and the cause remanded.