# ADRA NEWMAN, HUGH McCARTER, RAY McCARTER, and MAX McCARTER v. MIRRIAN PROFFITT, JAMES G. PROFFITT, PLEAS PROFFITT, LLOYD HUGH PROFFITT, LUCILLE PROFFITT WHALEY, and DELL McCARTER HUSKEY. —440 S.W.2d 827.

Eastern Section. September 4, 1968.

Certiorari Denied by Supreme Court January 6, 1969.

398

Hailey & Waters, Sevierville, Flynn & Flynn, Knox-ville, for appellants.

Ogle & Ogle, Philip Wynn, Sevierville, for appellees.

COOPER, J.  Pleas F. Proffitt, Lloyd J. Proffitt, and Lucille Whaley, children of George E. Profitt, deceased, and heirs at law of P. A. Proffitt, deceased, have appealed from a decree of the Chancery Court of Sevier County ordering the partition by sale of 15 acres of land and the distribution of the proceeds among the several heirs at law of P. A. Proffitt. The appellants contend that the Chancellor erred in holding that P. A. Proffitt died in-testate as to the property in question, and in failing to hold that the appellants acquired the fee in the 15 acre tract under the will of P. A. Proffitt or by deeds executed by Marrian Proffit, the surviving wife of P. A. Proffitt.

The 15 acres in dispute originally were part of a 160 acre tract, known as the "home farm", acquired by P. A. Proffitt on December 1, 1894.

On February 4, 1930, P. A. Proffitt executed a will, the material provisions of which are as follows:

"I give and bequeath to my two Sons, Namely George E. Proffitt and James G. Proffitt all of my home farm. But my wife Miriam Proffitt is to have control and the use of it. Can sell the timber or rent said land use it in any way to have her support in case the two Sons does not prop-erly provide for her during her lifetime * * *

"The line through my home farm that divides the place between George E. Proffitt and James G. Proffitt is to begin on top of the back field ridge at a bunch of chestnuts. Thence eastward to the public road at a cut

made in the hill Thence eastward with a cross fence to a pair of bars. Thence northward the way the farm road leads to the bridge at the back field branch Thence eastward down said branch to the main branch. Thence eastward up the ridge to the top of the ridge, to a pine on H. C. Ogle's line.

\* \* \* \* \* \*

"Should one of my Sons die or leave no lawful heirs then his share to be divided in equal parts among my other heirs."

On August 10, 1953, P. A. Proffitt and wife, Mirrian, conveyed the home farm to their two sons, George E. and James Proffitt, giving to each the fee in the property set aside for them in the 1930 will, subject to a life estate based on the lives of the grantors. The deeds also provided for a reversion of a part of the property conveyed in the event the grantee predeceased the grantors. The revocation in the deed to George E. Proffitt is in the following language:

"Should George E. Proffitt die before we die. Then the land West of the Public Road leading from Dudley to the Glades Church is to fall back entirely to us and we can sell said land or dispose of it as we see fit to do so." (The land west of the public road is the 15 acre tract now in dispute.)

George E. Proffitt died on January 4, 1965. His father, P. A. Proffitt, died nine days later.

The will executed by P. A. Proffitt on February 4, 1930, was probated in the County Court of Sevier County on January 28, 1965, without protest or contest.

Subsequently, on March 5, 1965, Mirrian Proffitt conveyed her interest in the 15 acre tract to the appellants.

From the above, the Chancellor concluded that the deed of August 10, 1953, operated as an ademption or revocation pro tanto of the devise to George E. Proffitt; that, as a consequence, P. A. Proffitt died intestate as to the 15 acre tract and the fee in the tract descended to the heirs at law of P. A. Proffitt, subject to the estate based on the life of Mirrian Proffitt.

We can not agree with the Chancellor's conclusion that the fee in the 15 acre tract passed under the laws of intestacy, but are of the opinion that it passed to the heirs of George E. Proffitt, under the specific devise in the will.

Ademption has been defined as "the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject-matter which interferes with the operation of the will." American Trust & Banking Co. v. Balfour, 138 Tenn. 385, 390, 198 S.W. 70, 71, 71 L.R.A.1918D 536; Wiggins v. Cheatham, 143 Tenn. 406, 411, 225 S.W. 1040, 13 A.L.R. 169. The term "ademption" is often used in reference to a gift by the testator in his lifetime to the legatee of a legacy given to the legatee by will, or in satisfying such legacy by giving, in place thereof, something of value. This is sometimes called "ademption by satisfaction." Phillip's Pritchard on Wills and Estates, Sec. 462, p. 403. "Ademption" is also used to indicate the loss of a legacy by the termination of the testator's interest in the subject matter of the legacy during the lifetime of the testator. This is sometimes referred to as "ademption by extinction." Page on Wills, Sec. 54.1, p. 242; Phillip's Pritchard on Wills and Estates, Sec. 426, p. 403.

An ademption can be total or partial (pro tanto). If partial, that part of the specific bequest or devise owned by the testator at his death passes under the will. 6 Page on Wills, Sec. 54.17, p. 270. The time to determine the existence of the subject matter of the bequest or devise is the moment of the testator's death. T.C.A. sec. 32-301.

"If testator conveys less than his entire estate in realty or in some interest therein, such conveyance does not totally adeem the devise. Instead the reversion, remainder, or other interest retained by the testator passes to the devisee." 6 Page on Wills, Sec. 54.17, p. 270.

"A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had an interest at his decease, unless a contrary intention appear by its words and context." T.C.A. sec. 32-301.

"Whenever the devisee or legatee to whom, or any member of a class to which, an immediate devise or bequest is made, dies before the testator * * * leaving issue which survives the testator, said issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will." T.C.A. sec. 32-306.

"The intention of the testator is important in cases of ademption by satisfaction in determining whether a bequest of a specific thing is withdrawn from the operation of the will or whether testator's dealings with the

beneficiary with respect to the bequest establishes an ademption by satisfaction. However, in cases of ademption by extinction the rule prevails without regard to the intention of the testator or the hardship of the case, and is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply.'' Phillip's Pritchard on Wills and Estates. Sec. 426, pp. 403-04; Rhodes v. Kebke, 179 Tenn. 480, 167 S.W.2d 345; Wiggins v. Cheatham, 143 Tenn. 406, 225 S.W. 1040, 1041, 13 A.L.R. 169.

█ There is no presumption of implied revocation of a devise where, as in this case, the testator conveys the property to the devisee and reacquires possession and title to the same property, or part of it. See Rhodes v. Kebke, 179 Tenn. 480, 167 S.W.2d 345, 348, and cases there cited. No extrinsic evidence was introduced in this case which tended to show that the testator, by executing the deed of August 3, 1953, intended to revoke his devise of real property to George E. Proffitt or intended the conveyance of the lesser interest to be in full satisfaction of the devise. The dominant purpose of the testator as we see it was to divide the ''home farm'' equally between his two sons (with other provisions being made for his other heirs), and, at the same time ensure the future support of the testator's wife, Mirrian. If a part of the ''home farm'' passed under the laws of intestacy, this purpose would be defeated.

In Duncan v. Mahaffa, 26 Tenn.App. 696, 177 S.W.2d 28, a case similar to the instant case in that the testator conveyed all his realty to the principal beneficiaries of his will and thereafter reacquired the property and owned it at his death, the court summarily held that no revoca-

tion or ademption was established and that the property passed under the will. In doing so, the court pointed out that "a will takes effect as of the death of the testator," citing Section 8133 of the Tennessee Code, now T.C.A. sec. 32-301, which provides:

"A will shall be construed * * * to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context."

Of similar import is the statement in Volume 6 of Page on Wills, Sec. 54.7, p. 252, that:

"If testator has devised realty, a conveyance of such realty by testator operates as an ademption if he does not acquire title thereto, and own it at his death. At common law such a conveyance would have operated as a revocation of the devise. At modern law, such conveyance should be classed as an ademption, rather than as a revocation since such realty will pass under such devise, without a republication and reexecution of the will, if testator reacquires title to such realty and owns it at his death."

It is undisputed that the 15 acre tract held in fee by the testator at his death was a part of the specific devise of real property to George E. Proffitt. We think, under the above authorities, the testator's interest in the tract of land passed to the heirs of George E. Proffitt under the specific devise in the will.

The appellees take the position in argument, though it was not a basis of the Chancellor's decree, that the death of George E. Proffitt prior to P. A. Proffitt's

death caused the property to pass to the several heirs at law of P. A. Proffitt under the clause in the will which provided that:

"Should one of my Sons die or leave no lawful heirs then his share to be divided in equal parts among my other heirs." The appellees insist that the key to the actuation of this clause was the death of George E. Proffitt and that it was immaterial whether or not George E. Proffitt had any "lawful heirs" at the time of his death. We do not think this was the intent of the testator. If it were, there would have been no need to make reference to the absence of lawful heirs of the deceased son. We think the testator intended for the home farm to pass to his sons or their heirs, and that an interest in the farm would go to the testator's heirs generally—only if a son predeceased the testator and the son left no lawful heirs.

Having concluded that the appellants are the owners of the 15 acre tract under the will of P. A. Proffitt, deceased, and that the appellees have no interest in said property as heirs at law of P. A. Proffitt, the Chancellor's decree for sale of the 15 acre tract for partition is reversed. Costs are adjudged against appellees, Adra Newman, Ray McCarter and Max McCarter, who filed this suit.

McAmis, P. J., and Parrott, J., concur.