IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2004 Session

IN RE ESTATE OF EDWARD LOUIS GREENAMYRE

Appeal from the Chancery Court for Putnam County
No. 2002-76    Vernon Neal, Chancellor

No. M2003-00964-COA-R3-CV  - Filed December 7, 2005

This appeal involves a dispute regarding the fate of specific bequests in a will prepared by a college professor without the assistance of counsel. The professor's mental capacity declined after he prepared the will, and the Chancery Court for Putnam County appointed a conservator for the professor who, with the court's approval, auctioned off his personal property, including property subject to specific bequests in the professor's will. After the professor died, his executrix petitioned the trial court to construe several provisions of his will. The trial court heard the matter without a jury and, relying on *In re Estate of Hume*, 984 S.W.2d 602 (Tenn. 1999), concluded that several of the specific bequests had been adeemed by extinction. The trial court also concluded that the parties attorney's fees and the court costs should be paid from the intestate funds in the estate. On this appeal, one of the beneficiaries of an adeemed bequest takes issue with the court's conclusion that she was not entitled to the proceeds from the sale of the property bequeathed to her and that she was not entitled to recover all of her attorney's fees. The professor's sole surviving heir at law takes issue with the trial court's decision to award this beneficiary any attorney's fees. We have determined that the trial court's decision regarding the fate of the specific bequests of personal property is correct but that the trial court erred with regard to the award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. FRANK G. CLEMENT, JR., J., filed a separate opinion concurring in part and dissenting in part.

Rankin P. Bennett, Cookeville, Tennessee, for the appellant, Gretta Guyton Stanger.

Joy Buck Gothard, Cookeville, Tennessee, for Anna L. Ham.

Kenneth S. Williams, Cookeville, Tennessee, for the appellees, Jiro Ishibashi and Hideo Ishibashi.

Dale Bohannon, Cookeville, Tennessee, for the appellee, Carol Gibbons.

**OPINION**

**I.**

Edward Louis Greenamyre was an anthropologist who served as a professor in the Department of Sociology and Philosophy at Tennessee Technological University in Cookeville, Tennessee. He studied and conducted extensive research in East Asia and was married to Fusako Ishibashi Greenamyre.

On April 12, 1994, Dr. Greenamyre executed a will that he had apparently prepared without the assistance of counsel. The will named Ms. Greenamyre as Dr. Greenamyre's sole beneficiary; however, it also contained detailed provisions regarding the disposition of Dr. Greenamyre's property if Ms. Greenamyre died first. In the event that Ms. Greenamyre predeceased Dr. Greenamyre, the will contained specific bequests to Gretta Guyton Stanger,[1] Dr. and Ms. Edmond D. Dixon,[2] Henry W. Mannle,[3] and Jiro and Hideo Ishibashi.[4] The will contained no residuary clause. Dr. Greenamyre named Ms. Greenamyre as his executrix, but he designated Carol Gibbons, a secretary employed in the Department of Sociology and Philosophy, to serve as his executrix if Ms. Greenamyre died before he did.

Ms. Greenamyre died first, and Dr. Greenamyre was eventually placed in The Renewal Center in Carthage, Tennessee. In April 1998, The Renewal Center petitioned the Chancery Court for Putnam County to appoint a conservator for Dr. Greenamyre because he lacked the capacity to manage his resources or to protect himself. The petition identified Dr. Anna Lois Ham of Louisiana, Dr. Greenamyre's first cousin, as his closest living relative. It also requested that Kelly Tayes of the Office of the Public Guardian for the Upper Cumberland Development District be appointed as Dr. Greenamyre's conservator. Dr. Stanger also sought to be named conservator.

Following a hearing on May 1, 1998, the trial court appointed Ms. Tayes as the conservator for Dr. Greenamyre's person and property. The court also appointed Charles L. Hardin as Dr. Greenamyre's guardian ad litem. On June 25, 1998, Ms. Tayes filed a petition seeking permission

---

[1]Dr. Stanger was one of Dr. Greenamyre's colleagues at Tennessee Technological University. Her bequest included (1) all of Dr. Greenamyre's personal property except specific items of property given to others, (2) all cash in Dr. Greenamyre's checking account at Citizens Bank, and (3) the contents of Dr. Greenamyre's safe deposit box at Citizens Bank. Dr. Stanger was also named as secondary beneficiary of a life insurance policy issued by Franklin Life Insurance Company.

[2]Dr. Edmond Dixon was another one of Dr. Greenamyre's colleagues at Tennessee Technological University. The Dixons' bequest included all of Dr. Greenamyre's framed pictures, hanging artwork, pottery, a woman's Rolex watch, and two men's Rolex watches.

[3]Mr. Mannle's bequest included all of Dr. Greenamyre's books on law enforcement and criminal justice.

[4]Jiro and Hideo Ishibashi were Ms. Greenamyre's nephews. Each of them were to receive one-half of the value of all certificates of deposit and interest thereon owned by Dr. Greenamyre at the time of his death.

to sell Dr. Greenamyre's personal property at auction. She stated that he owned household goods and furnishings, two automobiles, and other personal property that he would not need in the future. She supported this petition with the affidavit of Dr. Greenamyre's physician stating that Dr. Greenamyre would never be able to return home. The trial court entered an order on July 6, 1998 authorizing the public auction.

Dr. Greenamyre's personal property was sold at public auction on August 11, 1998. Among the items sold were a 1.8 carat diamond ring,[5] a ruby ring,[6] a woman's Rolex watch,[7] two men's Rolex watches,[8] and two automobiles.[9] The auction grossed $61,692.00 and netted $50,993.30. Ms. Tayes deposited the auction proceeds in Dr. Greenamyre's checking account at Union Planters Bank. The trial court confirmed the sale on August 28, 1998.

On April 21, 1999, Ms. Tayes filed a property management plan reflecting that Dr. Greenamyre's assets consisted of $329,625.57 in cash and certificates of deposit at Union Planters Bank, First Tennessee Bank, and Regions Bank. In addition, the report stated that Dr. Greenamyre's monthly income was $3,615.42[10] and that his monthly expenses were $2,800.00. Ms. Tayes stated that her intention was to deposit the funds in the Regions Bank savings account and one of the Regions Bank certificates of deposit into a J. C. Bradford money market account as soon as the certificate of deposit matured.[11] She also stated that it was her intention to pay Dr. Greenamyre's expenses from his income and that she planned to use the principal only if Dr. Greenamyre's income was insufficient to pay his expenses. On May 10, 1999, the trial court entered an order approving this management plan.

Dr. Greenamyre died on December 5, 2000 at the age of seventy. On January 23, 2001, Ms. Gibbons filed a petition in the trial court to probate Dr. Greenamyre's April 12, 1994 will. On August 20, 2001, Ms. Gibbons filed an inventory valuing Dr. Greenamyre's estate at $592,594.11. Thereafter, questions arose regarding the fate of Dr. Greenamyre's bequests to Dr. Stanger, the Dixons, and Jiro and Hideo Ishibashi. Ms. Gibbons also had questions about Dr. Greenamyre's

---

[5]The appraised value of this ring was $18,500. It was sold at auction for $12,250. Had the ring not been sold, it would have been part of the bequest to Dr. Stanger.

[6]The appraised value of this ring was $475. It was sold at auction for $200. Had this ring not been sold, it would have been part of the bequest to Dr. Stanger.

[7]The woman's Rolex watch was sold at auction for $210. Dr. Greenamyre had left this watch to Ms. Dixon.

[8]These Rolex watches were sold at auction for $4,125. Dr. Greenamyre had left these watches to Dr. Dixon.

[9]A 1995 Mercury was sold for $7,300, and a 1995 Ford Escort was sold for $5,600. Had these automobiles not been sold, they would have been part of the bequest to Dr. Stanger.

[10]For some unexplained reason, the report did not include Dr. Greenamyre's $1,398 per month military pension that was being deposited directly into a savings account at First Tennessee Bank. Counting this pension, Dr. Greenamyre's monthly income exceeded $5,000.

[11]These two accounts contained approximately $146,475.

instructions regarding his funeral and burial expenses, the safe-keeping of his six cats, and a $25,000 contribution to the Twin Cities Buddhist Association.

Dr. Stanger insisted that she was entitled to receive an amount equal to the balance in Dr. Greenamyre's Union Planters Bank account on May 4, 1998 when the conservatorship was created,[12] as well as the proceeds from the sale of the personal property she would have received under Dr. Greenamyre's will. The Dixons insisted that they were entitled to receive an amount equal to the proceeds from the sale of Dr. Greenamyre's art and the three Rolex watches. Jiro and Hideo Ishibashi asserted that they were entitled to all of the certificates of deposit in Dr. Greenamyre's name when he died, regardless of the source of the funds used to purchase these certificates. Finally, Dr. Ham asserted that she was Dr. Greenamyre's sole heir at law and, therefore, that she was entitled to the remainder of Dr. Greenamyre's estate under the rules of intestate succession because Dr. Greenamyre's will did not contain a residuary clause.

Ms. Gibbons also faced one other ambiguity as Dr. Greenamyre's executrix. Dr. Greenamyre's will instructed her to use the proceeds of "any travel insurance policy to which I have subscribed or will subscribe in the future" (1) to pay for his funeral and burial expenses, (2) to make a $25,000 donation to the Twin Cities Buddhist Association, and (3) to arrange for the safe-keeping of his six cats. Dr. Greenamayre apparently had no travel insurance policies in force at the time of his death, but his estate contained sufficient funds to pay these expenses.

Accordingly, on March 5, 2002, Ms. Gibbons filed a complaint requesting the trial court to address four questions regarding the construction of the will. She named as defendants all the persons receiving special bequests in Dr. Greenamyre's will. The first question involved the bequest to Dr. Stanger of "[a]ll cash in any checking account at Citizens Bank held singly or jointly in my name." The second question involved the bequest of the Rolex watches to the Dixons. The third question involved the bequest of "[a]ny certificates of deposit listed in my name at the time of my death" to Jiro and Hideo Ishibashi. The final question sought the court's permission to use other funds in the estate to pay for Dr. Greenamyre's funeral expenses, the safekeeping of his six cats, and the $25,000 contribution to the Twin Cities Buddhist Association.

On April 3, 2003, following hearings on December 10, 2002 and February 18, 2003, the trial court entered an order construing Dr. Greenamyre's will. The most significant decision made by the trial court, at least as far as this appeal is concerned, involved the legal effect of the sale of Dr. Greenamyre's personal property in 1998. Relying on *In re Estate of Hume*, 984 S.W.2d 602 (Tenn. 1999),[13] the trial court concluded that the sale worked an ademption by extinction of the specific bequests of personal property to Dr. Stanger and the Dixons. Accordingly, the trial court determined that Dr. Stanger was only entitled to the $8,474.68 balance in Dr. Greenamyre's Union Planters Bank account at the time of his death and that the Dixons were entitled to nothing.

---

[12]After Dr. Greenamyre executed his will, Citizens Bank was acquired by Union Planters Bank. When the conservatorship was created, this account contained $16,618.80.

[13]*In re Estate of Hume* was later superceded by the enactment of Tenn. Code Ann. § 32-3-111 (Supp. 2005).

The trial court also determined that Dr. Ham was the sole intestate beneficiary and heir of Dr. Greenamyre and that Jiro and Hideo Ishibashi were entitled to the certificates of deposit and their pro rata share of interest on these funds. In addition, the court determined that the costs and the fees of the parties' attorneys should be paid from the intestate funds in the estate. Dr. Stanger and Dr. Ham have appealed. Dr. Stanger takes issue with the trial court's conclusion that the bequest to her of Dr. Greenamyre's personal property was adeemed by extinction and that she was not entitled to the amount of money in Dr. Greenamyre's Union Planters Bank account when the conservatorship was created. She also insists that the trial court erred by failing to award her all her attorney's fees. Dr. Ham takes issue with the trial court's decision to award Dr. Stanger any attorney's fees from the intestate funds in the estate.

## II.
### THE PERSONAL PROPERTY SOLD AT AUCTION

Dr. Stanger's primary argument on appeal is that the trial court erred by relying on *In re Estate of Hume*, 984 S.W.2d 602 (Tenn. 1999) when it determined that the conservator's sale of Dr. Greenamyre's personal property resulted in an ademption by extinction of his specific bequests to her. She insists that the holding of *In re Estate of Hume* should be limited to its facts and that we should instead adopt the reasoning of two unpublished decisions.[14] We have determined that no principled basis exists for refusing to apply the legal reasoning of *In re Estate of Hume* to this case.

When the Tennessee Supreme Court decided *In re Estate of Hume* in 1999, it clearly aligned Tennessee with the jurisdictions that follow the strict "identity" theory of ademption by extinction. *Stewart v. Sewell*, No. M2003-01031-COA-R3-CV, 2005 WL 873304, at *13 (Tenn. Ct. App. Apr. 14, 2005). The Court stated in plain terms that:

> Ademption by extinction results because of "the doing of some act with regard to the subject-matter which interferes with the operation of the will." *Balfour*, 198 S.W. at 71.[15] In these cases:
>
> > the rule [of ademption by extinction] prevails *without regard to the intention of the testator or the hardship of the case*, and is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply.
>
> *Wiggins v. Cheatham*, 143 Tenn. 406, 225 S.W. 1040, 1041 (1920) (emphasis added) (citation omitted). In other words, it only matters that the subject of the specific bequest no longer exists because of

---

[14] *In re Estate of Rutledge*, No. 85-338-II, 1986 WL 6063 (Tenn. Ct. App. May 29, 1986) (No Tenn. R. App. P. 11 application filed); *In re Estate of Phillips*, No. 00P-656 (Davidson Cir., Aug. 21, 2002).

[15] *American Trust & Banking Co. v. Balfour*, 138 Tenn. 385, 198 S.W. 70 (1917).

> "the doing of some act;" it is irrelevant who or what initiates "the doing." *Balfour*, 198 S.W. at 71.

*In re Estate of Hume*, 984 S.W.2d at 604. Citing *McGee v. McGee*, 413 A.2d 72 (R.I. 1980), the court concluded that the "rule that the intent of the testator is irrelevant in ademption by extinction cases is in harmony with the modern holdings found in the majority of states." *In re Estate of Hume*, 984 S.W.2d at 604-05.

Dr. Stanger argues that the reasoning of *In re Estate of Hume* should be limited to foreclosure sales where the testator has defaulted on a loan secured by the property subject to the specific bequest. She insists that this court should instead follow the rule adopted in other states[16] and embodied in the Uniform Probate Code[17] that the sale of specifically devised property by a guardian or conservator, acting in good faith,[18] does not result in an ademption by extinction of the bequest. We find no defensible basis for limiting the holding of *In re Estate of Hume*.

No language in *In re Estate of Hume* reflects the Tennessee Supreme Court's intention to limit its holding regarding the legal elements of ademption by extinction. In fact, the court rested its decision on an opinion by the Supreme Court of Rhode Island in a case factually akin to this one. *McGee v. McGee*, 413 A.2d at 72. In that case, the son of the testator, acting pursuant to his mother's power of attorney, withdrew funds from a bank account subject to a specific bequest and used the funds to purchase a United States Treasury bond. In reaching its conclusion that the withdrawal of the funds and the purchase of the treasury bond resulted in an ademption by extinction of the specific bequest, the Rhode Island court noted that the concept of ademption by extinction applies to "actions of a testator himself or through his guardian, conservator, or agent." *McGee v. McGee*, 413 A.2d at 75.

The authors of the Uniform Probate Code cite *McGee v. McGee* as an example of the harsh results that can follow the strict application of the identity rule in cases involving ademption by extinction. Uniform Probate Code § 2-606 cmt, 8 U.L.A. 47 (Supp. 2005). We are confident that neither the facts of *McGee v, McGee* nor the view of the drafters of the Uniform Probate Code regarding the holding of *McGee v. McGee* were lost on the Tennessee Supreme Court. In fact, the court, again citing *McGee v. McGee*, noted that the fact that the strict application of the rule might frustrate the intent of the testator was outweighed by the stability, uniformity, and predictability that the rule would bring. *In re Estate of Hume*, 984 S.W.2d at 605.

---

[16] *See* Jeffrey F. Ghent, Annotation, *Ademption or Revocation of Specific Devise or Bequest By Guardian, Committee, Conservator, or Trustee of Mentally or Physically Incompetent Testor*, 84 A.L.R. 4th 462 (1991).

[17] Uniform Probate Code § 2-606(b) (1997), 8 U.L.A. 47 (Supp. 2005).

[18] Earlier this year, this court held that the holding of *In re Estate of Hume* did not apply in cases where the testator's fiduciaries acted in bad faith when they disposed of the property subject to a specific bequest. *Stewart v. Sewell*, 2005 WL 873304, at *14.

In 2004, five years after the Tennessee Supreme Court handed down *In re Estate of Hume*, the Tennessee General Assembly adopted Uniform Probate Code § 2-606.[19] This Act, however, has no application to this case. The law in effect when a testator dies controls all the substantive rights in the estate, and thus a statute taking effect after the testator's death cannot change the construction of the testator's will. *Fell v. Rambo*, 36 S.W.3d 837, 844-45 (Tenn. Ct. App. 2000). Dr. Greenamyre died in December 2000, and thus the rights of the persons taking under his will must be determined based on the law as it existed at that time.

Our decision in this case is thus controlled by *In re Estate of Hume*. This court does not have the prerogative to disregard decisions of the Tennessee Supreme Court. *See Payne v. Johnson*, 2 Tenn. Cas. (Shannon) 542, 543 (1877). As intermediate appellate judges, we are obliged to follow the directions of the Tennessee Supreme Court, particularly after the "court has given definite expression to its views in a case after careful consideration." *Holder v. Tenn. Judicial Selection Comm'n*, 937 S.W.2d 877, 881 (Tenn. 1996). The court's holding in *In re Estate of Hume* embodies the principles of the ademption by extinction doctrine that we must apply to this case.[20]

Like the trial court, we have determined that the bequest to Dr. Stanger was a specific bequest and, therefore, was subject to ademption by extinction. Based on the law as it stood in December 2000 when Dr. Greenamyre died, we have also concluded that the auction sale of Dr. Greenamyre's personal property in 1998 amounted to an ademption by extinction of the personal property bequeathed to Dr. Stanger. The subjects of these specific bequests no longer exist. Accordingly, she is not entitled to the net proceeds of the sale of this property.

## III.
### THE UNION PLANTERS BANK ACCOUNT

Dr. Stanger makes a similar argument with regard to the money in Dr. Greenamyre's Union Planters Bank account. While Dr. Stanger stops far short of accusing Ms. Tayes of any wrong doing, she asserts that she is entitled to receive an amount equal to the balance in the account when the conservatorship was established because no financial necessity forced Ms. Tayes to transfer the money to other accounts. For the same reasons that we concluded that Dr. Stanger is not entitled to the net proceeds from the sale of the personal property she would have received under Dr. Greenamyre's will, we conclude that she is not entitled to receive anything more than the $8,474.68 that was in the Union Planters Bank account when Dr. Greenamyre died.

---

[19] Act of May 20, 2004, ch. 866, § 3, 2004 Tenn. Pub. Acts 1974 (codified at Tenn. Code Ann. § 32-3-111).

[20] Even though the Tennessee Supreme Court did not address our decision in *In Re Estate of Rutledge* in *In re Estate of Hume*, it is clear that the reasoning in *In re Estate of Hume* undermines the continuing validity of *In re Estate of Rutledge*.

## IV.
### THE ESTATE'S LIABILITY FOR DR. STANGER'S ATTORNEY'S FEES

The final issue in this case involves the payment of Dr. Stanger's attorney's fees. Dr. Stanger takes issue with the trial court's decision to award her only a portion of the fees she requested. However, Dr. Ham insists that the trial court erred by requiring the estate to pay any portion of Dr. Stanger's attorney's fees. After reviewing the record, we find no appropriate factual basis for differentiating between the services of Dr. Stanger's attorney and the services of the attorneys representing the other parties in this proceeding. Accordingly, we have determined that the estate should be required to pay the full amount of Dr. Stanger's attorney's fees accrued in the trial court. However, we find no basis for awarding Dr. Stanger additional attorney's fees for this appeal.

Tennessee follows the American Rule with regard to attorney's fees. Under the American Rule, each litigant must wage its own fight for justice with its own resources, James H. Cheek III, Note, *Attorney's Fees: Where Shall the Ultimate Burden Lie*, 20 Vand. L. Rev. 1216, 1221 (1967), and litigants are responsible for their own attorney's fees no matter "however wrongful may have been the suit, or however groundless the defense." *Corinth Bank & Trust Co. v. Security Nat'l Bank*, 148 Tenn. 136, 154, 252 S.W. 1001, 1006 (1923). Accordingly, in the absence of a statute, contract, or equitable rule requiring otherwise, attorneys must generally look to their own clients for their fees. *Kline v. Eyrich*, 69 S.W.3d 197, 204 (Tenn. 2002); *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *Elliott v. Elliott*, 149 S.W.3d 77, 88 (Tenn. Ct. App. 2004).

Will construction cases represent a well-known exception to the American Rule. When a will contains an ambiguity, litigation may be to the mutual benefit of the estate and the beneficiaries. *Harris v. Bittikofer*, 562 S.W.2d 815, 817-18 (Tenn. 1978). If an ambiguity in a will requires litigation to resolve it, the expenses of the litigation, including the parties' attorney's fees may be charged against the estate of the testator who was responsible for the ambiguity. *Marshall v. First Nat'l Bank of Lewisburg*, 622 S.W.2d 558, 560 (Tenn. Ct. App. 1981). Thus, the courts frequently require a testator's estate to pay the attorney's fees of parties named as defendants in will construction cases filed by executors. *See, e.g.*, *Leaver v. McBride*, 506 S.W.2d 141, 145 (Tenn. 1974); *Boulton v. Cochran*, 41 Tenn. App. 43, 64, 292 S.W.2d 511, 520 (1956). However, the courts shift the burden of paying attorney's fees from the client to the estate only after they are satisfied that the purpose of the litigation was to benefit the estate. *First Am. Nat'l Bank v. Charlton*, 557 S.W.2d 500, 501 (Tenn. 1977); *Pierce v. Tharp*, 224 Tenn. 328, 338, 455 S.W.2d 145, 149 (1970).

Dr. Ham first insists that Dr. Stanger is not entitled to have her attorney's fees paid by the estate because she did not include a specific request for attorney's fees in her answer as required by Tenn. R. Civ. P. 9.07. While including a specific prayer for attorney's fees in an answer is a prudent practice, *see Hardcastle v. Harris*, 170 S.W.3d 67, 90 (Tenn. Ct. App. 2004), we have concluded that there are two reasons why Dr. Stanger's oversight in this case should not undermine her request for attorney's fees. First, her pretrial brief clearly put both the estate and all other parties on notice that she was seeking to have her attorney's fees paid by the estate. Second, despite our observation

approximately twenty-five years ago that requests for attorney's fees were "fairly unusual,"[21] seeking the payment of attorney's fees is now more commonplace. Thus, the courts now hold with some consistency that failing to request attorney's fees specifically is not fatal in cases where the parties already know that attorney's fees may be recovered from another party.[22]

Determining (1) whether filing suit to construe the will was necessary, (2) whether the attorney's services benefitted the estate, (3) whether the parties' attorney's fees should be paid from the estate, and (4) the amount of the attorney's fees are discretionary decisions. *Chaille v. Warren*, 635 S.W.2d 700, 703 (Tenn. Ct. App. 1982); *Tigrett v. Tigrett*, 61 Tenn. App. 172, 203, 453 S.W.2d 100, 114 (1967). The reasonableness of a particular attorney's fee depends on the facts of the case. *Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn. Ct. App. 1995). Accordingly, we review a trial court's decisions regarding the award of attorney's fees using the "abuse of discretion" standard of review.

The "abuse of discretion" standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

The trial court's decision to require the estate to pay the fees of the four attorneys who participated in this case reflects its conclusions that the suit to construe Dr. Greenamyre's will was appropriate, that the work of all the attorneys benefitted the estate, and therefore, that the estate should be required to pay all or a portion of the parties' attorney's fees. These conclusions are supported by the record.

---

[21]*Marshall v. First Nat'l Bank of Lewisburg*, 622 S.W.2d at 561.

[22]Thus, the courts have overlooked failure to comply with Tenn. R. Civ. P. 9.07 in cases where a statute specifically authorizes the recovery of attorney's fees from another party. *See*, *Bloomingdale's By Mail v. Huddleston*, 848 S.W.2d 52, 56 (Tenn. 1992) (recovery of a tax refund); *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989) (child support); *Hardcastle v. Harris*, 170 S.W.3d at 91 (Tennessee Securities Act of 1980); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 533-34 (Tenn. Ct. App. 2002) (Tennessee Consumer Protection Act).

Deciding whether a party's attorney's fees should be paid by the estate does not necessarily hinge on the success of the party's claims. *See First Am. Nat'l Bank v. Cole*, 211 Tenn. 213, 222, 364 S.W.2d 875, 879 (1963); *Howell v. Stroud*, 1 Tenn. App. 301, 312-13 (1925). The controlling question is whether the entire estate benefitted from the efforts of the party's lawyer. Dr. Stanger's participation in the suit to construe Dr. Greenamyre's will benefitted the estate even though she did not prevail. Her claims have now been definitively resolved, and her attorney aided materially in that resolution. Now that the questions regarding Dr. Greenamyre's will have been laid to rest, Ms. Gibbons may distribute the assets and close the estate without further controversy or dispute.

The final issue involves the portion of Dr. Stanger's attorney's fees that should be paid by Dr. Greenamyre's estate. Dr. Stanger's attorney submitted an affidavit establishing that his fees and expenses amounted to $9,807.92; however, the trial court, without explanation, directed the estate to pay only $6,751.62 of the requested fee. Based on the record before us, we find that the trial court erred by failing to direct Dr. Greenamyre's estate to pay all of Dr. Stanger's legal expenses in the trial court.

Four attorneys were involved in this litigation. All four attorneys submitted fee requests to the trial court and requested the court to find them reasonable and then order that these fees be paid from the intestate funds in Dr. Greenamyre's estate. The trial court found that the fees requested by three of the four attorneys were reasonable and directed that they be paid from the estate.[23] However, the trial court approved only seventy percent of the fee requested by Dr. Stanger's attorney. Other than the fact that the attorneys representing Dr. Ham and Jiro and Hideo Ishibashi were on the "prevailing" side of the dispute involving the application of the ademption by extinction doctrine, we find no substantive difference between the role that these lawyers played during this litigation and the role played by Dr. Stanger's attorney.

We have already pointed out that the success of a party's claim is not the sole factor for determining whether an estate should pay that party's legal expenses in a suit to construe a will. By awarding Dr. Stanger's attorney a portion of his requested fee, the trial court necessarily determined that the efforts of Dr. Stanger's attorney benefitted Dr. Greenamyre's estate. The trial court never concluded that the attorney's fees requested by Dr. Stanger's lawyer were unreasonable and never explained the legal or factual basis for its decision to award Dr. Stanger's attorney only a portion of his requested fee. Accordingly, we find that the trial court erred by directing Dr. Greenamyre's estate to pay only a portion of Dr. Stanger's attorney's fees in the trial court.

Dr. Stanger also insists that this court should require Dr. Greenamyre's estate to pay the legal expenses she incurred on this appeal. While we have the authority to award attorney's fees on appeal, we decline to do so in this case. The trial court's order properly addressed the ademption by

---

[23]The trial court determined that the $13,807.50 fee requested by the attorney representing Jiro and Hideo Ishibashi, the $6,375.00 fee requested by the attorney representing Dr. Ham, and the $5,580.82 fee requested by the attorney representing Ms. Gibbons were reasonable. Accordingly, the trial court directed the estate to pay all but $7,500.00 of these fees. Based on a prior agreement between Dr. Ham and Jiro and Hideo Ishibashi, the trial court directed that $7,500 of the fee requested by Jiro and Hideo Ishibashi's attorney be paid from their portion of the proceeds.

extinction issue raised by Dr. Stanger. Thus, this appeal was primarily intended to benefit Dr. Stanger.

## V.

We affirm the trial court's conclusion that the specific bequests of personal property to Dr. Stanger were adeemed by extinction and that Dr. Stanger is entitled only to the funds in Dr. Greenamyre's Union Planters Bank account when he died. We reverse the trial court's order directing Dr. Greenamyre's estate to pay $6,751.62 of Dr. Stanger's attorney's fees and direct the court to enter an order directing the estate to pay Dr. Stanger's attorney's fees in the amount of $9,807.92. We remand the case to the trial court with directions to enter the order heretofore required and for whatever other proceedings may be required. We also direct that the costs of this appeal be taxed to the Estate of Edward Louis Greenamyre for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.