# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 12, 2013 Session

# DOMINION ENTERPRISES, F/K/A TRADER PUBLISHING COMPANY v. DATAIUM, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 10-311-IV     Russell T. Perkins, Chancellor**

**No. M2012-02385-COA-R3-CV - Filed December 27, 2013**

This case involves litigation between two business entities: Dominion Enterprises, f/k/a Trader Publishing Company ("Dominion"), the former employer of six of the seven individual defendants, and Dataium, LLC ("Dataium"), a company subsequently formed by those defendants. Dominion filed a complaint against the defendants, alleging numerous causes of action, including breach of covenants not to compete, breach of fiduciary duty, breach of the duty of loyalty, breach of a non-solicitation agreement, and civil conspiracy. The trial court found that Dataium and two of the individual defendants were liable for breach of contract but dismissed Dominion's other claims. Dominion appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Teresa Bult and Katherine Summers Scarbrough, Nashville, Tennessee, and David Phippen, Fairfax, Virginia, for the appellant, Dominion Enterprises, f/k/a Trader Publishing Company.

Mark A. Baugh, Nancy A. Vincent, and Ben H. Bodzy, Nashville, Tennessee, for the appellees, Dataium, LLC; Eric Brown; D. Jason Ezell; Mark E. Krabacher; Jeffrey R. Dopp; Aaron West; Michael B. Ghaffari; and John Gerber.

## OPINION

### I. Factual and Procedural Background

Dominion, a partnership with headquarters in Virginia, provides marketing services

to a number of industries. Dealerskins, a subsidiary of Dominion, creates and maintains websites and website solutions for automotive dealers and manufacturers. Dataium is a limited liability company that collects, aggregates, and analyzes data from websites. Defendants Eric Brown, D. Jason Ezell, Mark E. Krabacher, Jeffrey R. Dopp, Aaron West, and Michael B. Ghaffari are employees of Dataium who previously worked for Dealerskins. Defendant John Gerber currently owns an interest in Dataium and was a former investor in Dealerskins.

In 1999, Mr. Ezell co-founded Dealerskins, while Mr. Gerber was involved in its formation, owning an interest therein through a company called Radnor Point. Dealerskins was later sold to Trader Publishing Company ("Trader"), predecessor to Dominion, in April 2005. As part of the sale, Mr. Ezell and Mr. Gerber[1] executed non-compete agreements valid until April 2010. Mr. Ezell remained employed with Trader following the acquisition. Two employees of Dealerskins, Defendants West and Dopp, transitioned to Trader with the sale. They signed agreements with Trader containing certain provisions, including that: 1) they would not compete with Trader, 2) they would not solicit employees from Trader, and 3) they would act with loyalty and in good faith. By such agreements they also assigned all inventions or innovations developed in the course of their employment to Trader. Defendant Krabacher, who became an employee of Dealerskins in 2007, signed a similar agreement.

In early 2008, Dealerskins developed a product called "Psychic Sales." By design, the product could generate sales leads for car dealers by collecting website users' information and emailing same to the dealer, along with information regarding the types of cars viewed by each user. Defendant Brown accepted the position of general manager of Dealerskins in January 2008, shortly after Psychic Sales was developed. Mr. Brown signed an employment agreement similar to those signed by Defendants West, Dopp, and Krabacher. Mr. Brown's work included further developing the Psychic Sales product and creating increased demand. Mr. Ghaffari was hired by Dealerskins in May 2008. He apparently never signed an employment agreement.

In March 2008, Mr. Brown and others on the management team at Dealerskins conceptualized a hypothetical "nightmare competitor" that would be able to aggregate, analyze, and report user behavioral data from multiple networked auto dealer websites. Dealerskins then began to explore development of a product that would allow such aggregated data collection and reporting from networked Dealerskins' websites in order to create additional revenue for Dealerskins.

In March 2009, unknown to higher management of Dealerskins, Mr. Brown and Mr.

---

[1]Mr. Gerber executed the agreement on behalf of Radnor Point.

Ezell began working to develop their own business intended to aggregate and report data from a broad network of websites and online sources. In furtherance of the undertaking, Mr. Ezell introduced Mr. Brown to Mr. Gerber for the purpose of securing financial backing. These steps in the formation of Dataium were not reported to Dealerskins. Mr. Ezell later solicited key employees of Dealerskins, both for employment by Dataium and to develop Dataium's product. He first approached Mr. West, Dealerskins' development manager, in May or June 2009. Mr. Ezell later contacted Mr. Dopp, Mr. Ghaffari, and Mr. Krabacher, who were considered some of Dealerskins' most talented technology employees.

On July 13, 2009, Mr. Brown's employment was terminated by Dealerskins due to declining performance concerns. Dataium was incorporated in June or July 2009. Mr. Brown and Mr. Ezell continued planning for this new "data mining" product to be offered by Dataium through the fall. A meeting was held at Mr. Brown's home with the other individual defendants in October 2009. Numerous email messages regarding the formation of Dataium were exchanged between the individual defendants. All individual defendants except Mr. Brown and Mr. Gerber were still employed by Dealerskins as they developed a plan to stagger their resignations so as not to draw attention to their actions. When Mr. Ezell was questioned on two occasions by Dealerskins personnel about rumors that he was launching a new company, he denied the accusations.

Dealerskins became aware of the individual Defendants' plans on December 16, 2009, when Mr. Brown inadvertently transmitted an email message regarding Dataium to a Dealerskins email account. Dealerskins immediately adopted measures safeguarding its intellectual property, which included terminating the employment of Mr. West, Mr. Ghaffari, and Mr. Krabacher. Consequently, Dealerskins was forced to recruit new employees to replace those who had exited. The company also strove to continue development of planned new products, but development was hampered by the loss of the key employees. On February 25, 2010, Dominion filed suit against Dataium and the individual defendants, alleging numerous causes of action, including breach of covenants not to compete, breach of fiduciary duty, breach of the duty of loyalty, breach of a non-solicitation agreement, and civil conspiracy. Dominion sought compensatory damages in excess of seven million dollars, as well as punitive damages and injunctive relief.

The case was tried from March 28, 2011, to April 5, 2011. The trial court dismissed all claims against Mr. Dopp, Mr. West, Mr. Krabacher, Mr. Ghaffari, and Mr. Gerber. The court assessed compensatory damages of $50,000.00 against Mr. Brown and Dataium for violation of the non-solicitation agreement and $100,000.00 against Mr. Ezell and Dataium for violation of the covenant not to compete. The court dismissed all other claims. The court found, *inter alia*, that although Dataium's product was somewhat similar to Dealerskins' product, the companies were not in direct competition and Dataium had not solicited

Dealerskins' customers. The court also ordered that Dataium, Mr. Brown, and Mr. Ezell not solicit or hire any Dealerskins employees for a period of one year. Dominion additionally sought an attorney's fee award exceeding $600,000.00. Regarding the request, the court awarded attorney's fees of $87,039.76 plus costs of $4,783.40 based on the "amounts requested and the results obtained." Defendants sought $267,604.20 in attorney's fees for defense of Dominion's claim brought pursuant to the Tennessee Trade Secrets Act, with the court denying this request. Dominion timely appealed.

## II. Issues Presented

Dominion presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in failing to find that Mr. Brown, in a conspiracy with Mr. Ezell, Mr. Gerber, and others, breached a fiduciary duty to Dominion.

2. Whether the trial court erred in holding that Dominion failed to establish a civil conspiracy claim.

3. Whether the trial court erred in holding that no predicate tort supported Dominion's civil conspiracy claim.

4. Whether the trial court erred in holding that the intra-corporate immunity doctrine applied to the conspiracy.

5. Whether the trial court erred in holding that Mr. West, Mr. Dopp, and Mr. Krabacher did not breach their contractual duties of loyalty and good faith.

6. Whether the trial court erred in holding that Dominion had failed to establish that conspiring defendants intentionally interfered with the contractual relations between Dominion and Mr. West, Mr. Dopp, and Mr. Krabacher.

7. Whether the trial court erred in holding that Mr. West had not breached his contractual duty not to solicit co-employees.

8. Whether the trial court erred in finding that no individual defendant other than Mr. Ezell breached an enforceable covenant not to compete.

9. Whether the trial court erred in holding that Dominion had not established its claim of unfair competition.

10.    Whether Dominion is entitled to increased actual and/or punitive damage awards.

11.    Whether the trial court erred in not ordering broad injunctive relief.

12.    Whether the trial court erred in failing to hold that each defendant is jointly and severally liable as a result of the claimed conspiracy.

Defendants present the following issues for our review, which we have restated slightly:

13.    Whether the evidence preponderates against the trial court's findings that Mr. Ezell and Mr. Brown are liable to Dominion for violation of restrictive covenants.

14.    Whether the award of compensatory damages to Dominion should be reversed.

15.    Whether the trial court erred in failing to award Defendants attorney's fees arising from the Tennessee Trade Secrets Act claim due to Dominion's alleged bad faith in bringing the claim.

16.    Whether the trial court erred in enforcing an unconscionable attorney's fee provision contained in Mr. Brown's agreement.

## III.  Standard of Review

The standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992).  No presumption of correctness attaches to the trial court's legal conclusions.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The findings of the trial court involving the credibility of witnesses are entitled to great weight on appeal.  *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982).

## IV.  Claim of Breach of Fiduciary Duty

Dominion contends that the trial court erred in failing to find that Mr. Brown breached his fiduciary duty by planning and developing Dataium while he was still employed as general manager of Dealerskins.  Dominion asserts that this breach includes Mr. Brown's involvement in soliciting employees of Dealerskins to work for Dataium. A thorough review of the record, however, reveals that Dominion failed to prove that Mr. Brown breached a fiduciary duty while still employed at Dealerskins.

Breach of fiduciary duty to a company has been defined by this Court as "assum[ing] positions of conflict with the interests of the corporation." *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 205 (Tenn. Ct. App. 2004) (quoting *Hayes v. Schweikart's Upholstering Co.*, 55 Tenn. App. 442, 402 S.W.2d 472, 483 (1966)). The question of whether a fiduciary duty has been breached is a question of fact. *B & L Corp.*, 162 S.W.3d at 205.

The evidence at trial demonstrated that Mr. Brown conceived the idea for a company specializing in data collection in 1998, prior to his employment with Dealerskins. Although Mr. Brown did begin discussing and planning Dataium with Mr. Ezell and Mr. Gerber while still employed at Dealerskins, he did not actually take a position with Dataium or speak to any other Dealerskins employees about Dataium until after his termination from Dealerskins.[2] The trial court found there was no breach of fiduciary duty, relying upon *Venture Exp., Inc. v. Zilly*, 973 S.W.2d 602, 606 n.2 (Tenn. Ct. App. 1998), wherein this Court held that a corporate officer is allowed to prepare to compete prior to his termination from the company without breaching a fiduciary duty. As further stated therein:

> The fact that one was once a director or officer of a corporation does not preclude his engaging in a business similar to that conducted by the company. It is said that it is a common occurrence for corporate fiduciaries to resign and form a competing enterprise and that unless restricted by contract, this may be done with complete immunity, because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. It is recognized that in doing so they can use in their own enterprise the experience and knowledge they gained while working for their former corporation . . . .

*Venture*, 973 S.W.2d at 604 (quoting 18B Am. Jur. 2d Corporations § 1713 (1985)). Accordingly, it was not a breach of fiduciary duty for Mr. Brown to engage in planning for another business opportunity prior to his termination from Dealerskins. Moreover, it was not a breach of his fiduciary duty for Mr. Brown to accept a position with another company after his termination from Dealerskins. We find no error in the trial court's dismissal of Dominion's claim of breach of fiduciary duty against Mr. Brown, as there was no showing that he assumed a position of conflict with Dealerskins' interests while he was employed there.

---

[2] The only other employee of Dealerskins who was contacted about the Dataium concept prior to Mr. Brown's termination was Mr. West, but he was contacted by Mr. Ezell. There was no proof that Mr. Brown had knowledge of that contact.

## V. Duty of Loyalty and Good Faith

Dominion argues that the trial court erred in failing to hold that Defendants West, Dopp, and Krabacher had breached their contractual[3] duty of loyalty and good faith. The trial court found that preparing to compete with an employer before resignation or termination does not constitute a breach of the duty of loyalty an employee owes to an employer, and that these employees were merely preparing to participate in a company that does not directly compete with Dealerskins. *See B & L Corp.*, 162 S.W.3d at 205; *Venture*, 973 S.W.2d at 606. Dominion contends, however, that these Defendants should be held to a different standard because they signed contracts that contained a more stringent duty-of-loyalty provision. This provision stated that "at all times during my employment, I owe Trader a duty of loyalty and a duty to act in good faith. I agree that during my employment, I will not individually, or in combination with any other employee, individual, or competitor of Trader, violate or breach the terms of this agreement."

Dominion asserts that Defendants West, Dopp, and Krabacher did more than prepare to compete with Dealerskins. According to Dominion, these individuals also embarked upon a plan to leave their employment with Dealerskins in a choreographed "mass defection" and failed to disclose their true intentions. The evidence demonstrated, however, that the conduct of these defendants did not rise to the level of "preparing to compete," as the business they joined was not a direct competitor of Dealerskins. Upon a careful review of the evidence, we cannot conclude that the trial court erred in determining that the conduct of these defendants in failing to fully disclose their reasons for leaving the employ of Dealerskins rose to the level of bad faith or breach of contractual duty of loyalty. There was also no evidence that Defendants West, Dopp, and Krabacher breached the terms of their respective agreements. This issue is without merit.

## VI. Claim of Intentional Interference with Contractual Relations

Dominion contends that the trial court erred in holding that Defendants Dataium, Brown, Ezell, and Gerber did not intentionally interfere with the contractual relations that Mr. West, Mr. Dopp, and Mr. Krabacher maintained with Dominion. Our courts have recognized that in order to establish intentional interference with contractual relations, one must show the following:

---

[3] Defendants contend that their contractual agreements were with Trader and not Dominion. As the trial court properly found in its final order, the contracts in question are enforceable by Dominion, as there was sufficient evidence to establish that Dominion and Trader were the same entity. Trader's name was simply changed to Dominion.

1. There must be a legal contract.

2. The wrongdoer must have knowledge of the existence of the contract.

3. There must be an intention to induce its breach.

4. The wrongdoer must have acted maliciously.

5. There must be a breach of the contract.

6. The act complained of must be the proximate cause of the breach of the contract.

7. There must have been damages resulting from the breach of the contract.

*Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009).

In this case, there was no evidence of a malicious intent, as in other cases where this element has been satisfied. *See New Life Corp. of Amer.,* 932 S.W.2d at 927 (genuine issue of fact found which precluded summary judgment wherein a representative of the defendant company admitted that the defendant was trying to drive the plaintiff out of business or injure the plaintiff to induce a lower sales price for the company); *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Dist. Co.*, 1986 WL 622 at *5 (Tenn. Ct. App. Jan. 2, 1986) (wherein malice was shown because the defendant company was paying sales commissions to employee of the plaintiff while he still worked for the plaintiff). We conclude that the trial court did not err in finding that Dominion failed to establish an intentional interference with contractual relations.

## VII. Claim of Civil Conspiracy

Dominion posits that the trial court erred in failing to find the existence of a civil conspiracy among the Defendants. As this Court has previously explained:

The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.

*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Civil conspiracy

requires an underlying predicate tort allegedly committed pursuant to the conspiracy. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). If the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail. *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).

In this case, the trial court found that the claim of civil conspiracy failed due to the lack of an underlying predicate tort. Dominion asserts that such a tort existed, alleging that it demonstrated that Mr. Brown breached his fiduciary duty to Dealerskins by pursuing another business opportunity during the time he was employed as general manager of Dealerskins. As we have concluded above, however, the trial court properly found that Mr. Brown did not breach his fiduciary duty. In fact, Dominion has failed to show any underlying predicate tort upon which a conspiracy claim can be based. As such, the trial court properly dismissed Dominion's conspiracy claim. Dominion's issues regarding the intra-corporate immunity doctrine and joint and several liability are therefore pretermitted as moot.

## VIII. Claim of Unfair Competition

Dominion asserts that the trial court erred in holding that it could not prevail upon a claim of unfair competition. With regard to the unfair competition claim, the trial court stated:

> Unfair competition is a generic name for several related torts involving improper interference with business prospects. *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004) (citing Prosser and Keeton on the Law of Torts § 130 at 1013 (5th ed.1984)). Plaintiff's unfair competition claim is duplicative of its claims for breach of fiduciary duty and breach of duty of loyalty, and it fails for the same reasons discussed above. Defendants did not wrongfully appropriate confidential information, products, tools, or clients from Plaintiff nor interfere with Plaintiff's business prospects. Plaintiff was suffering certain declines while Brown was manager before the Dataium concept was conceived. In fact, Dealerskins was critical of Brown's performance and eventually fired him for those declining results.

Upon a careful review of the evidence, we agree with the trial court. As this Court has explained:

> Quite apart from any improper motive, unfair competition, or for that matter other interferences with prospects, can be found when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives

the plaintiff of customers or other prospects. Liability for such losses may be imposed from defamation, disparagement, intimidation or harassment of the plaintiff's customers or employees, obstruction of the means of access to his place of business, threats of groundless suits, commercial bribery and inducing employees to commit sabotage.

*B & L Corp.*, 162 S.W.3d at 215-17 (quoting Prosser and Keeton on the Law of Torts § 130 at 1013 (5th ed.1984)). *See also FTA Enters., Inc. v. Pomeroy Computer Res., Inc.*, No. E2000-01246-COA-R3-CV, 2001 WL 185210 at *5 (Tenn. Ct. App. Feb. 12, 2001). As with the claim of civil conspiracy, a claim of unfair competition also requires an underlying tort, which the evidence did not establish in this case. As the trial court properly found, Dominion's unfair competition claim must fail for the same reason that the conspiracy claim fails. This issue is accordingly without merit.

IX. Mr. West's Duty Not to Solicit Employees

Dominion contends that the trial court should have found that Mr. West violated his contractual duty not to solicit employees of Dealerskins. In support, Dominion argues that Mr. West's non-solicitation clause addressed both direct and indirect solicitation and that Mr. West's involvement in the "conspiracy" would mean that the acts of his co-conspirators could be imputed to him. Dominion's argument regarding imputation must fail, however, because the trial court properly found that there was no actionable conspiracy. Further, in its findings of fact, the trial court found that only Mr. Brown and Mr. Ezell solicited Dealerskins' employees, not Mr. West, although Mr. West did have some knowledge of the situation. The findings of fact of the trial court involving the credibility of witnesses are entitled to great weight on appeal. *See Sisk*, 640 S.W.2d at 849. We conclude that the evidence does not preponderate against the trial court's determination that Mr. West did not violate the non-solicitation clause in his agreement.

As Defendants point out, Plaintiff has not cited any authority for finding a breach of a non-solicitation clause where the employee merely had knowledge that a third party was soliciting other employees. In fact, as the trial court noted, this Court has previously declined to find that a defendant breached a non-solicitation clause where there was no evidence that the defendant arranged interviews or took other steps to recruit the plaintiff's employees. *See McDaniel v. Manufacturers Consol. Servs., Inc.*, No. 02A01-9111-CH-00284, 1992 WL 218073 at *2 (Tenn. Ct. App. Sept. 11, 1992). We find no error in the trial court's adjudication of this issue.

X. Covenants Not to Compete

Dominion contends that the trial court erred in ruling that no individual defendants other than Mr. Ezell breached an enforceable covenant not to compete. Dominion asserts that Mr. Gerber's agreement was identical to Mr. Ezell's, such that if Mr. Ezell was found to be in violation of the agreement, Mr. Gerber also should have been found to be in violation of the agreement. Dominion's argument ignores that the main basis for the trial court's imposition of liability on Mr. Ezell was Mr. Ezell's personal solicitation of Dealerskins' employees. There was no proof that Mr. Gerber solicited Dealerskins' employees or had any involvement in the development of Dataium other than as an investor.

Regarding the remaining individual defendants and the non-competition provisions contained within their respective agreements, the trial court found that the non-competition provisions were overly broad to the extent that they prohibited the Defendants from engaging "in a business in which Plaintiff was not engaged or engaging in ordinary competition." *See, e.g., Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). The court found that the provisions could be interpreted to apply to a similar product that did not compete with Dealerskins' products and were therefore unenforceable in Tennessee because "a restrictive covenant may not be enforced in the absence of competition." *Id.* The court also found that the provisions could not be enforced to prohibit competition with Dealerskins' future products.

We agree with the trial court's factual findings. In a case addressing the enforceability of a non-competition provision, this Court explained:

> Covenants not to compete, because they are in restraint of trade, are disfavored in Tennessee. As such, they are construed strictly in favor of the employee. However, when the restrictions are reasonable under the circumstances, such covenants are enforceable. The factors that are relevant in determining whether a covenant not to compete is reasonable include "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 363 (1966).
>
> The first factor, consideration, is not an issue on appeal. In balancing the other three factors, a threshold question is whether the employer has a legitimate business interest, *i.e.*, one that is properly protectable by a non-competition covenant.

Several principles guide the determination of whether an employer has a business interest properly protectable by a non-competition covenant. Because an employer may not restrain ordinary competition, it must show the existence of special facts over and above ordinary competition. These facts must be such that without the covenant, the employee would gain an unfair advantage in future competition with the employer.

*See Vantage*, 17 S.W.3d at 644 (other internal citations omitted).

The trial court implicitly found that 1) Dominion had no legitimate business interest in protecting itself from similar products that only competed with Dealerskins' products in a limited fashion and 2) non-competition provisions could not restrain ordinary competition. *See Vantage*, 17 S.W.3d at 644. We agree. As the trial court explained:

Dataium sells automotive web data. It collects, aggregates and reports on consumers' behavior on automotive websites. Dataium places a tracking code on various internet sources across website platforms. Dataium collects clicks through the tracking codes and normalizes and reports the data. Dataium's data allows customers to benchmark their own web presence to others in the market, permitting customers to also see industry-wide trends across website platforms.

Dataium uses different technology from Psychic Sales. Dataium uses three licensed products and Java Code licenses from another vendor to collect data from websites. Dataium uses licensed business intelligence software from MicroStrategy to report data. Dataium does not use Dealerskins' technology. Psychic Sales does not collect data from more than one website; it reports existing data on a website. Psychic Sales does not normalize or translate data. Dataium collects, aggregates, normalizes, and analyzes data.

Psychic Sales facilitates a single car sale to a single buyer. Dataium's products are not focused on single sales, but are designed to help the customer understand trends in the industry and to compose or benchmark their own performance to those trends.

(References to transcript omitted.)

The evidence in this case demonstrated that the product offered by Dataium does not directly compete with products offered by Dealerskins because the products serve different purposes. Dealerskins's products allow consumer data to be gleaned from only Dealerskins'

websites for the purpose of generating sales leads, whereas Dataium's product allows consumer data to be gleaned from a variety of websites and online resources for the purpose of predicting demand and trends in the marketplace. The products use different technology, and Dataium's product has broader function. The fact that the products are directed to the same consumers, automotive dealers and manufacturers, does not render them to be competing, as they actually can be used in tandem. The evidence did not establish that anything proprietary or confidential to Dealerskins was involved with the development of Dataium. There was also no proof that Dealerskins lost any customers to Dataium. We conclude that the trial court properly found that these two companies only competed in a limited sense. The trial court did not err in ruling that there was no breach of the non-competition provisions contained in the agreements signed by Defendants Brown, West, Dopp, and Krabacher.

## XI. Request for Increased Damages and Broader Injunctive Relief

Dominion asserts that the trial court should have rendered a larger compensatory damage award, an award of punitive damages, and broader injunctive relief based on its claims of conspiracy, breach of fiduciary duty, unfair competition, intentional interference with contractual relations, breach of the duty of loyalty, and further breach of the non-competition provisions. Having found these claims to be without merit, we conclude further that there is no basis for awarding increased compensatory damages or broader injunctive relief.

Regarding the compensatory damage award generally, the trial court stated that it "was not persuaded by the hard-to-substantiate claims of damages offered by [Dominion]," finding that the claimed damages were somewhat "remote." We agree. In a non-jury case such as this, we review the amount of damages awarded by the trial court with a presumption of correctness unless the preponderance of the evidence demonstrates otherwise. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007). Dominion included in its damages claim such speculative and arbitrary components as the potential loss of revenue caused by a delay of more than a year in the launch of new products, the potential loss of revenue from Psychic Sales customers who might decide to cancel, and the decline in Dealerskins' profitability from March 2009 to the time of trial (even though the decline began before March 2009). We conclude that the evidence does not preponderate against the amount of compensatory damages awarded by the trial court. This issue is discussed in greater detail below.

Dominion also contends that the trial court's award of attorney's fees was too low. Dominion concedes that an award of attorney's fees is reviewed under an abuse of discretion standard. *See In re Estate of Greenamyre*, 219 S.W.3d 877, 885 (Tenn. Ct. App. 2005). In

*Greenamyre*, this Court elucidated that standard as follows:

> The "abuse of discretion" standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. Appellate courts do not have the latitude to substitute their discretion for that of the trial court. Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness. Discretionary decisions must, however, take the applicable law and the relevant facts into account. Accordingly, a trial court will be found to have "abused its discretion" only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.

*Greenamyre*, 219 S.W.3d at 885-86 (internal citations omitted).

Our Supreme Court has instructed that "a trial court should apply the factors set forth in RPC 1.5(a)(1)-(10) when determining a reasonable attorney's fee." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). These factors are:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) Whether the fee is fixed or contingent;

-14-

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5.

In this case, Dominion's attorneys sought total fees of $611,324.94 and costs of $8,403.34. The trial court concluded that as Dominion had prevailed only on certain issues, it was entitled to an award of attorney's fees pursuant to the contracts that were breached. The trial court found that the hourly rates charged by Dominion's counsel were reasonable and consistent with rates charged in the Nashville area. The court further found that the amount of time devoted by Dominion's counsel was reasonable.

The court noted, however, that in consideration of the "amounts requested and the results obtained," an award of the entire amount of fees requested was not warranted. The court thus awarded partial fees based upon twenty percent of the time spent by lead counsel and ten percent of the time spent by other attorneys and paralegals. The trial court's total award of attorney's fees was $87,039.76. The court also awarded claimed costs and expenses of $4,783.40, stating further that it had "excluded and declined to award those expenses the Court did not believe were allowable costs pursuant to the definition of 'discretionary costs' as defined by the state and federal rules."

Although the trial court did not specifically discuss Rule of Professional Conduct 1.5, the court clearly considered and applied the factors contained therein. The court specifically relied upon the factors regarding the reasonableness of time spent and hourly rates, finding that the time expended was reasonable, as were the hourly rates charged. The court also noted that the hourly rates were commensurate with those charged in the locality for similar services. The court placed great importance upon the "amount involved and results obtained," relying heavily upon this factor in awarding a reduced amount of fees. We conclude that the trial court did not apply an incorrect legal standard, reach a decision that is illogical, base its decision on a clearly erroneous assessment of the evidence, or employ reasoning that caused an injustice to the complaining party. *See Greenamyre*, 219 S.W.3d at 885-86. Therefore, we agree with the trial court's award of fees and find no abuse of discretion therein.

## XII. Liability of Mr. Brown and Mr. Ezell

Defendants posit that the trial court erred in finding that Mr. Brown and Mr. Ezell were liable for a violation of the restrictive covenants contained in their agreements. First,

Defendants argue that Dominion did not have standing to enforce the agreements Defendants executed because those agreements were entered with Trader, not Dominion. The trial court specifically rejected this argument, as do we. Dominion was permitted to present evidence that Dominion and Trader were the same legal entity, as Trader simply changed its name to Dominion. The admissibility of this evidence is addressed to the trial court's discretion, and we do not find that the court abused its discretion in allowing the evidence of the business name change to be introduced. *See Greenamyre*, 219 S.W.3d at 885-86. We also note that several witnesses' testimony substantiated this name change. We therefore find this argument to be unavailing.

Defendants also argue that the non-solicitation provision of Mr. Ezell's agreement had expired before the actions complained of herein took place. We agree. The trial court did not base its ruling regarding Mr. Ezell on the non-solicitation provision however. Rather, the court grounded its adjudication regarding Mr. Ezell on the non-competition provision, stating in relevant part:

> [T]here is some limited competition between the parties that leads the Court to conclude that certain of the conduct in soliciting Dealerskins' employees warrants the award of some relief for Dominion. This conduct disregarded Dominion's legitimate interests, within this limited area of competition, in a way that should not be countenanced by the Court.

There is no question that the non-competition provision did not expire until April 2010. This argument is also without merit.

Defendants further assert that the trial court erred in finding that Mr. Brown breached the non-solicitation provision contained within his agreement, as there was no proof that he actively recruited Dealerskins' employees. Contrary to Defendants' assertion, there was proof presented that Mr. Brown hosted a meeting at his home in October 2009 for employees of Dealerskins to discuss their potential involvement with Dataium. The evidence also demonstrated that Mr. Brown sent emails to other individual Defendants regarding their potential employment at Dataium while they were still working for Dealerskins. The evidence supports the trial court's finding that Mr. Brown violated the non-solicitation provision contained in his agreement with Dominion.

## XIII. Compensatory Damage Award

Defendants contend that the trial court's award of compensatory damages to Dominion should be reversed because it was not based on lost profits, as required by law, but rather was based on "probable loss of goodwill." The trial court, when fashioning its damage

award, found that Dominion did prove certain elements of damages caused by the loss of its employees, including the costs involved in replacing those employees. The court stated that these costs, which totaled $65,318.00, gave the court "some indication of the impact of the breach on Dealerskins." The court also determined that Dominion did not meet its burden of proof on other claimed damages, including the loss of revenue due to the delay in launching new products, but noted that it would take into account "that Ezell and Brown recruited some of the individual defendants while being paid by Dealerskins and that Brown's conduct probably caused some damage to Dealerskins' goodwill." The court continued:

> The Court does not believe that damages in this context are categorically limited to lost profits, even though lost profits are usually the measure of damages in the covenant not to compete context. Plaintiff has not demonstrated lost profits flowing from the portions of its breach of contract claim upon which they have prevailed.

The court awarded $50,000.00 against Mr. Brown and Dataium, and $100,000.00 against Mr. Ezell and Dataium, finding that Mr. Ezell's conduct was more damaging because he was a founder of Dealerskins and "the face of Dealerskins for a period of time." As the court found, Mr. Ezell was paid significant consideration for his non-competition agreement, was more active in recruiting Dealerskins' employees, and his conduct "probably damaged Dealerskins' goodwill to some difficult to ascertain extent."

As Defendants contend and the trial court recognized, damages in these types of actions are generally awarded based on lost profits. *See Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001). Lost or expected profits are recoverable as damages if they are shown to be a consequence of the breach, provided the amount can be proven with reasonable certainty. *Id.; see also Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 818-19 (Tenn. Ct. App. 1999) (holding that remote and speculative damages may not be recovered for a breach of contract, but contract damages that are proved with reasonable certainty may be recovered). As this Court has explained:

> Under the law of this state [the plaintiff] is entitled to be placed in the same position it would have been in had the contract been performed. Profits that [the plaintiff] would have realized had [the defendant] honored his agreement not to compete must be based upon certain assumptions. It cannot be established conclusively what would have happened had [the defendant] honored the restrictive covenant because he did not do so. Uncertain and speculative damages are prohibited only when the existence of damages is

uncertain, not when the amount of damages is uncertain. All that is required is proof with a reasonable degree of certainty.

*Powell v. McDonnell Ins., Inc.*, No. 02A01-9608-CH-00176, 1997 WL 589232 at *8 (Tenn. Ct. App. Sept. 24, 1997) (internal citations omitted). In addition to lost profits, other incidental damages may be awarded in order to place the plaintiff in the same position it would have been in had the contract been performed. *See Package Exp. Ctr., Inc. v. Maund*, No. E2000-02059-COA-R3-CV, 2001 WL 579051 at *4 (Tenn. Ct. App. May 30, 2001).

The trial court herein awarded damages based not on claimed lost profits, which were not proven, but rather on other incidental damages that Dominion would not have suffered had Mr. Ezell and Mr. Brown not breached their agreements. Those damages included amounts spent recruiting and replacing the employees that were solicited, as well as monies expended on Mr. Ezell's salary while he was being paid by Dealerskins and simultaneously recruiting employees away from Dealerskins. Although the trial court also referenced the loss of goodwill Dominion experienced, we do not find any authority for awarding damages for breach of a non-competition or non-solicitation provision for loss of goodwill. We specifically conclude that Dominion is not entitled to any monetary award based on loss of goodwill. We agree with the trial court, however, that its damage awards were a "reasonable estimate of Plaintiff's damages incurred by the precipitous exit of these employees" with regard to the incidental damages listed above. We therefore find no error in the amount of the trial court's award of compensatory damages.

XIV. Tennessee Trade Secrets Act and Attorney's Fees

In the instant action, Defendants sought $267,604.20 in attorney's fees for the defense of Dominion's claim brought pursuant to the Tennessee Trade Secrets Act. The court, however, denied this request. Defendants assert that this was error, maintaining that this claim was brought in bad faith and lacked any factual basis. Defendants rely on Tennessee Code Annotated § 47-25-1705 (2013), which states that if a claim of misappropriation of trade secrets is made in bad faith, attorney's fees may be awarded to the prevailing party.

Bad faith is defined as "dishonesty of belief or purpose." BLACK'S LAW DICTIONARY 149 (8th ed. 2004). The trial court found that Dominion's claim pursuant to the Tennessee Trade Secrets Act was not brought in bad faith. On this issue, the trial court stated, "Plaintiff's counsel ought not be charged with being both advocate and judge of their client's claims, and though the claim was not strong, it was plausible."

As Dominion points out, it had a reasonable basis to assert that its trade secrets might have been exploited in the Defendants' development of Dataium, this being a disputed issue

at trial. A few of the individual Defendants maintained knowledge of the inner workings of Dealerkins' processes, systems, and software. Whether that information was utilized in the formation of Dataium was ultimately an issue for the trier of fact. We conclude that the evidence preponderates in favor of a finding that this claim was not brought with dishonesty of belief or purpose. The trial court therefore did not err in declining to award attorney's fees pursuant to Tennessee Code Annotated § 47-25-1705.

## XV. Claim of Attorney's Fee Provision as Unconscionable

Finally, Defendants raise the argument that the trial court erred by enforcing the attorney's fees provision in Mr. Brown's contract because it is unconscionable. In support, Defendants argue that the attorney's fees provision is unilateral, that it is the result of unequal bargaining power, and that such provisions should be deemed *per se* unconscionable in the context of restrictive covenants in employment, even though this has never been recognized as the law in Tennessee. Defendants assert that "[t]here is no legitimate interest that warrants the enforcement of an attorney's fee provision that allows the recovery of exorbitant fees by a party of unequal bargaining power in the context of the employment relationship."

The trial court rejected Defendants' argument that the contract was unconscionable, and we agree. As this Court has previously elucidated:

> A court will generally refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case. If the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable.

*Whitton v. Hoover*, 313 S.W.3d 262, 264-65 (Tenn. Ct. App. 2009) (internal citations omitted); *see also Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004). We find no evidence of such a one-sided and oppressive agreement in this case. Mr. Brown was a sophisticated businessman who was given the opportunity to review and either accept or reject the agreement in question as part of the process of negotiating his employment with Dominion. There has been no showing that Mr. Brown's bargaining position was unequal relative to that of Dominion or that he had no reasonable alternative but to sign the contract. This issue is without merit.

## XVI. Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed to appellant, Dominion Enterprises. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE